USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/3/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-against-

MAMDOUH MAHMUD SALIM,

Defendant.

---

01-cr-00002-MKV

ORDER

MARY KAY VYSKOCIL, United States District Judge:

Defendant Mamdouh Mahmud Salim, proceeding *pro se*, has filed a motion for a reduction of his sentence under 18 U.S.C. § 3582(c)(2) [ECF No. 137] ("Def. Motion"). Defendant asserts that recent Supreme Court precedent establishes that his sentence of life in prison is illegal because of an enhancement applied to the calculation of Defendant's relevant sentencing range under the United States Sentencing Guidelines (the "Sentencing Guidelines"). The Government opposes the motion. As described herein, the Court denies the motion for a sentence reduction. However, the Court alternatively construes Mr. Salim's motion as a request to file a second or successive habeas petition pursuant to 18 U.S.C. § 2255(h) and transfers this application to the Second Circuit.

Mr. Salim was first arrested and detained in the United States in connection with the 1998 bombings of United States embassies in in Kenya and Tanzania. *United States vs. Salim*, 549 F.3d 67, 70 (2d Cir. 2008). While Mr. Salim was detained awaiting trial at the Metropolitan Correctional Center ("MCC") in Manhattan, he formulated a plan with a co-defendant to attack his attorney, who he had begun to dislike. *Id.* at 70-71. That plan involved a subplot to incapacitate a correctional officer and steal his keys. *Id.* At the agreed upon time, Mr. Salim attacked the officer, stabbing him in the eye with a "sharpened comb-knife." *Id.* "The weapon penetrated the corrections officer's eye and entered his brain." *Id.* After the assault, Mr. Salim

pleaded guilty to attempted murder under 18 U.S.C. §§ 1114 and 1117 and was sentenced to thirty-two years in prison on April 3, 2002. *Id.*

At his original sentencing, in connection with the calculation of Mr. Salim's sentencing range under the Sentencing Guidelines, the government urged the court to impose an enhancement to Mr. Salim's offense level arguing that the offense involved or was intended to promote terrorism (the "Terrorism Enhancement"). *Id.* at 76-77; *see also* Sentencing Guidelines § 3A1.4. Judge Batts, to whom the case was then assigned, declined to impose the Terrorism Enhancement, ruling that it applied only where the crime at issue involves "conduct transcending national boundaries." *United States v. Salim*, 287 F. Supp. 2d 250, 339 (S.D.N.Y. 2003).[1] The Government appealed that decision, and the Second Circuit reversed. *Salim*, 549 F.3d at 77. The Circuit held that the Terrorism Enhancement does not require such international conduct and remanded the case for resentencing because "the sentence imposed was unreasonable based on the procedural failure to calculate the appropriate Guidelines range." *Id.* at 79. Mr. Salim was resentenced in 2010 to a term of life in prison. *See* Sentencing Order, ECF No. 123; Amended Judgment, ECF No. 126.

The Second Circuit thereafter affirmed Mr. Salim's life sentence, finding that the district court did not abuse its discretion in connection with applying the Terrorism Enhancement to Mr. Salim's sentencing guidelines calculation. *United States vs. Salim*, 690 F.3d 115, 126-27 (2d Cir. 2012). In 2014, Mr. Salim filed a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2255, on the ground that he had received ineffective assistance of counsel. *See* Motion to Vacate Conviction, ECF No. 132. The motion was denied, and the court refused to issue a

---

[1] Mr. Salim's first sentencing was conducted on May 3, 2004, before the United States Supreme Court decided *United States v. Booker*, which ruled that the Sentencing Guidelines only were advisory and not mandatory. 543 U.S. 220, 259 (2005). As a result, at the time, the court's decisions on such enhancements were dispositive of Mr. Salim's sentence.

certificate of appealability. *See Salim v. United States*, No. 01-CR-002 (DAB), 2015 WL 10792047, at *8 (S.D.N.Y. Aug. 27, 2015). In 2018, Mr. Salim moved for leave to file a second habeas petition in the Second Circuit, relying on several of the same arguments he raises again here. *See* ECF No. 1, *Salim v. United States*, Case No. 18-3039 (2d Cir. Oct. 16, 2018). The Second Circuit denied the application. *See* Mandate, ECF No. 136. Mr. Salim then filed the present motion seeking a reduction of his sentence under 28 U.S.C. § 3582(c)(2). *See* Def. Motion at 1. Essentially, Mr. Salim argues that recent Supreme Court precedent holds that the court never should have applied the Terrorism Enhancement to his sentencing guidelines range calculation because it concerned conduct for which he was not convicted. *See* Def. Motion at 4-5 (arguing the recent Supreme Court decision in *United States v. Davis*, which found the definition of "crime of violence" in 18 U.S.C. § 924(c) unconstitutionally vague, bears on his case). The Government opposed the motion and filed a memorandum in opposition. *See* Opposition, ECF No. 142. Mr. Salim thereafter filed a reply. *See* Reply Memorandum, ECF No. 147.[2]

Typically, federal courts "may not modify a term of imprisonment once it has been imposed." *Dillon v. U.S.*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). However, the court may reduce the sentence of a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(o) . . . [and] after considering the factors set forth in section 3553(a) to the extent that they are applicable, [and only] if such a reduction is consistent

---

[2] Mr. Salim initially filed a "Draft" reply memorandum out of concerns about meeting the filing deadline. As the Court understands it, due to the ongoing COVID-19 pandemic, the facility where Mr. Salim is incarcerated (the United States Penitentiary, Administrative Maximum Facility in Florence, Colorado) limited inmate access to the law library in an effort to reduce the spread of the disease. Along with his full reply, Mr. Salim filed a motion to strike his draft reply. *See* ECF No. 147. The Court will not strike the document from the docket, but instead has reviewed both the draft and the fulsome reply in order to ensure the Court has considered all of the arguments Mr. Salim has or could make in light of his *pro se* status.

with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). As the statute makes clear, a defendant seeking a reduction under Section 3582 must identify a formal amendment of the Sentencing Guidelines to succeed on his motion. *Id*; *see also Poindexter v. U.S.*, 556 F.3d 87, 89 (2d Cir. 2009) (per curiam). "Changes in law brought about by court decisions may not be a basis for reduction of sentence under § 3582(c)(2)." *Poindexter*, 556 F.3d at 89 (citing *Cortorreal v. United States*, 486 F.3d 742, 744 (2d Cir. 2007) (per curiam)).

Moreover, a Section 3582(c)(2) motion is "not the proper vehicle" for a court to consider other issues a petitioner may have regarding his original sentencing that are not in relation to an amendment to the Sentencing Guidelines. *United States v. Vasquez*, 837 Fed. Appx. 843, 844 (2d Cir. 2021) (citing *United States v. Mock*, 612 F.3d 133, 135 (2d Cir. 2010)). Section 3582(c)(2) "'narrow[ly]' authorizes courts to reduce the portion of a sentence impacted by a Guidelines amendment." *Id.* (quoting *Dillon*, 560 U.S. at 825-26). A court is not "free to address, in a proceeding pursuant to 18 U.S.C. § 3582(c)(2), [a] defendant's arguments regarding procedural errors at his original, now-final sentencing' if those purported errors are unrelated to any Guidelines amendment." *Id.* (quoting *United States v. Mock*, 612 F.3d 133, 135 (2d Cir. 2010)) (alteration in original).

Mr. Salim moves pursuant to Section 3582(c)(2) to reduce his life sentence. However, he points to no amendment to the Sentencing Guidelines that would change the guidelines calculations for his sentence. *Poindexter*, 556 F.3d at 89. Indeed, he could not, as the Terrorism Enhancement, which is the only guidelines enhancement with which Mr. Salim takes issue, was last amended in 2002, long before both Mr. Salim's original vacated sentencing and his re-sentencing in 2010. *See* Sentencing Guidelines § 3A1.4 Historical Notes. As a result, Mr. Salim

4

has not met the pre-requisites for establishing a right to a sentence reduction pursuant to Section 3582 and the motion is denied on that ground.

However, as Mr. Salim is proceeding here *pro se*, the Court also considers the present motion as a request to file a second or successive petition for a writ of habeas corpus.  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (A pro se litigants pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest.").  The Government urges the Court to deny this request as well, stating that the Second Circuit, in 2019, denied an application from Mr. Salim "raising the precise arguments he makes in the instant application."  *See* Opposition, ECF No. 142, at 16.  The Court generally agrees with the Government that the current application raises no new rule of constitutional law that applies to Mr. Salim's case.  *See* Opposition at 15-19.  Indeed, when compared to his previous petition, the only new precedent Mr. Salim cites is *United States v. Davis*, __ U.S. __, 139 S. Ct. 2319 (2019), which found the definition of "crime of violence" in 18 U.S.C. § 924(c) unconstitutionally vague.  *Id.* at 2336.  That case does not appear to have any bearing on the limited question Mr. Salim presents here: whether his sentence is illegal because of the imposition of the Terrorism Enhancement during the calculation of his Sentencing Guidelines range.  Finally, even if the Court were to search for another ground for which *Davis* might be relevant, none exists.  Mr. Salim was charged and convicted under 18 U.S.C. §§ 1114 and 1117, which do not contain any of the same language as 18 U.S.C. § 924(c)(3)(B)— the only text at issue in *Davis*.  *Id.*  Thus, it appears clear that Mr. Salim's reliance on *Davis* is misplaced and that he has not satisfied his burden to file a successive habeas petition.

However, that is not a determination this Court is permitted to make in the first instance.  A district court is without jurisdiction to consider a second or successive habeas petition, and

5

instead must transfer the request to the Court of Appeals for a determination pursuant to 28 U.S.C. § 2255(h).  *See Liriano v. United States*, 95 F.3d 119, 123 (2d Cir. 1996).  While it appears plain to the Court that Mr. Salim's motion, construed as a successive habeas petition, fails to raise any "newly discovered evidence" or "new rule[s] of constitutional law," that permits his filing, *see* 28 U.S.C. § 2255(h), the Court nonetheless is obligated to transfer this action to the Second Circuit for a definitive ruling.

## CONCLUSION

For the reasons stated herein, Defendant's Motion for a Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(2) is DENIED because he has not raised any amendment to the Sentencing Guidelines that affects his sentence here.  The Court also construes Defendant's motion as an application for leave to file a successive habeas petition.  On that ground, this case is TRANSFERRED to the Court of Appeals for the Second Circuit for a determination pursuant to 18 U.S.C. § 2255(h).

The Clerk of Court respectfully is requested to terminate the pending motions at ECF Nos. 137 and 147 in this case and to transfer this action to the Second Circuit.

**SO ORDERED.**

Date:  December 3, 2021
     New York, NY

*/s/ Mary Kay Vyskocil*
**MARY KAY VYSKOCIL**
**United States District Judge**